UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

FATHI MUSHAPHA CULLEN,

        Plaintiff,               Case No. 1:23-cv-1251

v.                                       Honorable Phillip J. Green

JANE JONES, et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF Nos. 1, PageID.9; ECF No. 10, PageID.59.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ."

2

28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants. However, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's Fourteenth Amendment equal protection

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

claims. Plaintiff's failure to protect claims and state law claims against Defendants will remain in the case.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon County Jail (MCJ) in Muskegon, Muskegon County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Sergeant Jane Jones, Deputy Officer John Holmstrom, Sergeant John Vanderlaan, Deputy Officer John Foster, Deputy Officer John Durga, Unknown Party #3 named as Sergeant John Doe,[2] and Deputy Officer John Murphy.

In his amended complaint, Plaintiff alleges that on June 3, 2023, inmate Torrance "Daniel" Williams came to Plaintiff's cell door and told Plaintiff that he had a problem with Plaintiff. Plaintiff asked what the problem was, and inmate Williams stated that he had discovered that Plaintiff was trying to steal his company and that Plaintiff "was in cahoot[s] with the Feds and Joe Biden[,] who stole his money out of the Federal Reserve to win [the] presidential election." (ECF No. 8, PageID.45.) Plaintiff told inmate Williams to "go [on] wit[h] the BS," and proceeded to ignore inmate Williams. (*Id.*) This seemed to make inmate Williams louder and more aggressive, yelling and punching Plaintiff's cell window. This attracted the attention

---

[2] In Plaintiff's original complaint, he had named three unknown parties as Defendants. (Compl., ECF No. 1, PageID.3) In Plaintiff's amended complaint, he named only one unknown party as a Defendant—Unknown Party #3, identified as Sergeant John Doe. (Am. Compl., ECF No. 8, PageID.44.)

of Defendant Foster "in the bubble," who asked on the intercom what was going on. (*Id.*) Plaintiff explained and asked Defendant Foster to remove inmate Williams from the area. Defendants Durga and Murphy then arrived in the area, and Defendant Durga pulled out his taser. Inmate Williams then told Defendant Durga to put his taser down and to fight him. Eventually Defendant Murphy was able to calm inmate Williams down, and Williams began crying. Ultimately, inmate Williams asked Defendants "to pop" Plaintiff's door open so that Williams could try to kill Plaintiff. (*Id.*)

The next day, June 4, 2023, Defendants Holmstrom and Jones let inmate Williams out of his cell during Plaintiff's out of cell time. Plaintiff states that when inmate Williams was released from his cell, Plaintiff began to walk towards the front of the pod, but inmate Williams said he just wanted to talk. (*Id.*, PageID.47.) However, at some point, inmate Williams "said something else and then just swung." (*Id.*) Plaintiff does not remember "anything that happened after that." (*Id.*) Three days later, Plaintiff woke up in the hospital after being in a coma as a result of the injuries he sustained during the assault by inmate Williams. (*Id.*) Plaintiff suffered a concussion, a broken orbital socket, and a hematoma in his jaw. (*Id.*) Plaintiff states that he lost partial vision in his left eye and peripheral vision in both eyes. (*Id.*) Plaintiff also suffers from depression, anxiety, and night terrors. (*Id.*) Inmate Williams was ultimately criminally charged for the assault. (*Id.*, PageID.46.)

Plaintiff states that Defendants knew or should have known of the threats and failed to properly communicate the threats and failed to protect Plaintiff from harm. (*Id.*)

Plaintiff states that Defendant Unknown Party #3 worked the night of the initial threats by inmate Williams and was made aware of the threats, but failed to properly communicate the situation to the next shift. (*Id.*, PageID.49.) Plaintiff alleges that Defendant Vanderlaan failed to review the incident logbook and make himself aware of any threats that occurred on a previous shift. (*Id.*) Plaintiff also asserts that both Defendants Unknown Party #3 and Vanderlaan are both supervisory officials and are vicariously liable for the conduct of their subordinates. (*Id.*)

Plaintiff contends that Defendants Jones and Holmstrom were both made aware of inmate Williams' threats against Plaintiff but let inmate Williams out of his cell to attack Plaintiff despite knowledge of the threats. (*Id.*)

Plaintiff attaches copies of an affidavit by inmate Dondrell Thomas to his original complaint. (ECF No. 1-1, PageID.15.) In the affidavit, inmate Thomas attests that on June 3, 2023, he was lying in bed and heard an argument between Plaintiff and inmate Williams in which inmate Williams threatened to kill Plaintiff. (*Id.*) Inmate Thomas also witnessed inmate Williams assaulting Plaintiff on June 4, 2023, and states that during the assault, inmate Williams said "I told you! I told them!" (*Id.*) Inmate Thomas states that Defendant Jones told inmate Williams to

6

stop and to lock down, then other officers came in and Plaintiff was taken out in a wheelchair. (*Id.*)

Plaintiff also attaches a copy of a grievance he filed on June 11, 2023, regarding the incident. (*Id.*, PageID.18.) In the grievance, Plaintiff states that he was assaulted by an inmate and put in a coma because officers from the previous night failed to properly document and relay to the next shift that he had been threatened in front of group of five to six officers, including Defendant Durga, who was also threatened by the inmate. (*Id.*) Plaintiff asserts that the inmate told officers that if they ever let him out of his cell when Plaintiff was out, he would kill Plaintiff. (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his rights under the Eighth Amendment[3] and the Equal Protection Clause of the Fourteenth Amendment. Plaintiff also asserts violations of state law. Plaintiff seeks damages and equitable relief. (ECF No. 10, PageID.59.)

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.* at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a

---

[3] Plaintiff is incarcerated at a county jail, and he does not specify the nature of his custody. Therefore, as discussed below, the Court considers Plaintiff's failure to protect claims under both the Eighth and Fourteenth Amendment standards.

7

cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

8

### A. Equal Protection

As noted above, Plaintiff claims that Defendants violated his Fourteenth Amendment right to equal protection. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc.*, 470 F.3d at 298)). "'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)); *see also Nordlinger*, 505 U.S. at 10; *Tree of Life Christian Sch. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) ("A plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'").

Plaintiff fails to allege any facts showing that there were other inmates at MCJ who received threats from a fellow inmate and were treated differently by the named Defendants. Instead, any allegations of discriminatory treatment are wholly

9

conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Furthermore, even viewing Plaintiff's equal protection claim as a class-of-one claim, the Court would reach the same conclusion because Plaintiff's equal protection claims are wholly conclusory and he has alleged no facts that plausibly suggest that his equal protection rights were violated.

Accordingly, for these reasons, Plaintiff's equal protection claims will be dismissed.

### B. Failure to Protect

Plaintiff contends that Defendants were deliberately indifferent to a risk of serious harm to him and failed to protect him. If Plaintiff was a convicted prisoner at the time of the incident in question, his failure to protect claims would arise under the Eighth Amendment. In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison official acted with "deliberate indifference" to a substantial risk of serious harm facing the plaintiff. *Id.* at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814

(6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 79 (6th Cir. 1995). Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67.

If Plaintiff was a pretrial detainee at the time of the incident in question, his failure to protect claims would arise under the Due Process Clause of the Fourteenth Amendment. *Westmoreland v. Butler County*, 29 F.4th 721, 727 (6th Cir. 2022). "[T]o establish deliberate indifference for failure to protect, 'a defendant . . . must [1] act intentionally in a manner that [2] puts the plaintiff at a substantial risk of harm, [3] without taking reasonable steps to abate that risk, [4] and by failing to do so actually cause the plaintiff's injuries." *Stein v. Gunkel*, 43 F.4th 633, 639 (6th Cir. 2022) (quoting *Westmoreland*, 29 F.4th at 729).

Plaintiff asserts that each of the named Defendants in this case knew or should have known of the threats against him by inmate Williams, and that their failure to take these threats seriously resulted in a grievous assault on him by inmate Williams. With respect to Defendants Jones and Holmstrom, Plaintiff alleges that each knew of the threat but nonetheless released inmate Williams from his cell when Plaintiff was not in his cell, placing Plaintiff in danger of being attacked. Elsewhere in Plaintiff's complaint, he alleges that Defendants Unknown Party #3, Murphy, Foster and Durga, who were working at the jail during the initial threat by inmate Williams,

11

failed to properly inform the next shift of the threats so that they could take precautions to protect Plaintiff from inmate Williams. Plaintiff also alleges that Defendants Unknown Party #3 and Vanderlaan "knew of or heard about the incident, [and] didn't make sure it was properly documented and communicated so Plaintiff's and Daniel's path [did not] ever cross."[4] (ECF No. 8, PageID.48.)

Plaintiff's allegations are not a model of clarity; however, at this stage of the proceedings, taking Plaintiff's allegations as true and in the light most favorable to him, applying either the Eighth Amendment or Fourteenth Amendment standard to Plaintiff's failure to protect claims, the Court will not dismiss these claims on initial review.

## III. State Law Claims

Plaintiff asserts that Defendants violated his rights under state law. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S.

---

[4] Plaintiff lists "Vicarious Liability" as "Count Four" of the amended complaint. (ECF No. 8, PageID.48.) In this count, Plaintiff seeks to hold Defendants Unknown Party #3 and Vanderlaan liable solely due to their "supervisory power." (*Id.*) However, government officials, such as Defendants, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). Instead, a claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). As set forth herein, at this stage of the proceedings, the Court will not dismiss Plaintiff's failure to protect claims against Defendants Unknown Party #3 and Vanderlaan based on the facts alleged by Plaintiff regarding their *personal involvement* in the matter. Plaintiff's attempt to hold these Defendants liable solely based on their subordinates alleged unconstitutional acts fails to state a claim.

922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants violated state law therefore fails to state a claim under § 1983.

Further, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *See Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.") (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, because there continue to

13

be pending federal claims against Defendants, the Court will exercise supplemental jurisdiction over Plaintiff's state law claims against them.

## IV. Pending Motions

Plaintiff has filed motions for the appointment of counsel, to produce documents, and for legal materials, copies, and access to law library. (ECF Nos. 3, 5, 6, and 7.) Regarding Plaintiff's motion for the appointment of counsel (ECF No. 3), the Court notes that indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff's request for appointment of counsel (ECF No. 3) will therefore be denied at this time.

Regarding Plaintiff's motions to produce documents, and for legal materials, copies, and access to law library, the Court notes that this case is before the Court for preliminary review and Defendants have not yet been served. In light of this, these

motions (ECF Nos. 5, 6, and 7) are premature and will therefore be denied without prejudice.

## Conclusion

Plaintiff's pending motion (ECF Nos. 3, 5, 6, and 7) will be denied without prejudice. Further, having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's Fourteenth Amendment equal protection claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's failure to protect claims and state law claims against Defendants Jones, Holmstrom, Vanderlaan, Foster, Durga, Unknown Party #3, and Murphy remain in the case.

An order consistent with this opinion will be entered.

Dated:  January 26, 2024                    /s/ Phillip J. Green
                                                             PHILLIP J. GREEN
                                                             United States Magistrate Judge